UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-10109-CV-KING

SULEYMAN UNUVAR,

      Plaintiff,

v.

THE CITY OF KEY WEST,
a municipal corporation,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (DE #18). Plaintiff has responded (DE #30), and Defendant filed a Reply (DE #35). Because there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law, Defendant's Motion for Summary Judgment is **GRANTED.**

### I.     Factual Background

After carefully reviewing the parties' submissions, pleadings, depositions, and affidavits, the Court determines that the material facts are not in dispute. Plaintiff, Suleyman Unuvar, is a Turkish Muslim who alleges that Key West Code Enforcement Officers have harassed him based on his religion and national origin. He brings this action against the City of Key West under Section 1983 for violations of the Equal Protection Clause.

Plaintiff operates a street vendor business in Key West performing Henna Art tattoos and occasionally selling beads. He originally operated at 305 Duval Street, where he had the proper occupational licenses. Then, he moved to 227 Duval Street, to a restaurant/bar named Fogarty's, but did not have the proper license to operate there. One night in late February 2005, Code

Enforcement Officer James Young was walking home from dinner, during which he had consumed three beers. Young received a complaint from another street vendor that Plaintiff was operating without a license. Young approached Plaintiff and demanded to see Plaintiff's license in front of other customers. Plaintiff attempted to show Young the restaurant owner's license, but Young informed him that he needed to have his own license, and notified Plaintiff that he would return in several days to confirm that he had obtained a license.

On March 14, 2005, Plaintiff obtained a license for performing body art within Fogarty's. On March 17, 2005, Plaintiff obtained a second license for the same thing. On or about March 19, 2005, Young again approached Plaintiff and asked to see his license, but when Plaintiff attempted to show Young his license, Young called him a liar. Young did not issue Plaintiff a notice of violation or civil citation. On March 21, 2005, Plaintiff complained to Assistant City Manager James Jones about Young's conduct. Jones contacted the licensing department on Plaintiff's behalf and assisted him in obtaining the proper license. Plaintiff was satisfied with Jones's assistance. That night, Young again approached Plaintiff and claimed that he knew Plaintiff had complained to Jones, and ordered Plaintiff to move his business from that location. Plaintiff asked Young if the motivation behind his conduct was that Plaintiff is Turkish and a Muslim, to which Young replied yes. Young did not issue Plaintiff a notice of violation or civil citation. Every year since March 14, 2005, Plaintiff has been issued an occupational license for body art at 227 Duval Street, but Plaintiff ceased operating his business there sometime in April 2005. Young was fired by the City shortly after these incidents, although the record is unclear as to why he was fired, and he has apparently been re-hired by the City.

At some point in October 2006, Plaintiff was selling beads at 227 Duval Street for the Fantasy Fest celebration, but he did not have the necessary special event license. He was issued

2

a Notice of Code Violation.    After approaching Assistant City Manager Jones about the violation, the City issued Plaintiff an "after the fact" special event license, which resulted in the violation being dismissed without any costs, fines, or penalties being assessed against Plaintiff.

On September 21, 2007, Code Compliance Officer Gary Addlemen issued Plaintiff a civil citation for obstructing the sidewalk by leaving a 3-foot sign propped against a City pole. Addlemen told Plaintiff, "you guys come to this country, my father and grandfather died for this country." The county court eventually dismissed the case, and no fines, costs, penalties, or fees were assessed against Plaintiff.

## II.    The Legal Standard for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that, to meet its burden, the nonmoving party

must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

## III.    Discussion

### A.    The Threshold Issue: There Was No Constitutional Deprivation

Before turning to the substance of Plaintiff's arguments, it is necessary to determine initially whether there was any constitutional deprivation to begin with.  The evidence establishes that Plaintiff has never been denied a license by the City or made to go a longer process to obtain a license.  On the contrary, when Plaintiff approached Assistant City Manager James Jones to complain about Code Enforcement Officer Young's conduct, Jones contacted the licensing department and helped Plaintiff secure the proper license.  Moreover, when Plaintiff was issued a Notice of Violation for selling beads without a special events license (which Plaintiff admits was justified), Jones took the extraordinary step of issuing Plaintiff an "after the fact" license, which resulted in the violation being dismissed without any costs, fines, or penalties being assessed against Plaintiff.  The only other civil citation issued against Plaintiff, for obstructing the sidewalk, was also dismissed in county court without any costs, fines, or fees being assessed against Plaintiff.  Thus, Plaintiff's claim that he was forced to go through a longer process to obtain the proper licenses is simply not supported by the evidence.  Finally, the cases

cited by Plaintiff do not support his position.  In both *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216 (7th Cir. 1994) and *Flores v. Pierce*, 617 F.2d 1386 (9th Cir. 1980), the city officials took affirmative steps (protesting to the licensing board and falsifying an inspection report, respectively) to deny those plaintiffs licenses because of their race or religion.  That is not what occurred in the instant case; in fact, just the opposite is true.  There is no evidence that any City official took any steps to prevent the issuance of Plaintiff's licenses. Rather, the Assistant City Manager went out of his way to ensure that Plaintiff could obtain the proper license and that one of his code violations was dismissed without penalty.  Thus, *Sherwin* and *Flores* are inapposite.

Moreover, Defendant contends, and Plaintiff does not dispute, that the harassment suffered by Plaintiff at the hands of Young and Addlemen does not qualify as a constitutional deprivation under section 1983.  *See Crenshaw v. City of DeFuniak Springs*, 891 F. Supp. 1548, 1554 (N.D. Fla. 1995) ("However, verbal threats or verbal harassment, even if racial in nature, are not constitutional violations cognizable under Section 1983.") (citing *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)).  Young and Addlemen's statements to Plaintiff, while offensive and unprofessional, do not rise to the level of a constitutional violation. Thus, Plaintiff has not suffered a constitutional deprivation.

## B.  Young and Addlemen Are Not City Policymakers

The determination that Plaintiff has not suffered a constitutional deprivation would normally end the inquiry, and the Court need not delve further into Plaintiff's arguments. However, in the interest of being thorough, the Court will address those arguments. It is important to note first that Plaintiff is suing the City of Key West, not the individuals who

allegedly engaged in the discrimination. Therefore, to prevail on this claim, Plaintiff must show that the City had a custom or policy of discrimination. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Indeed, "the law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001).

Plaintiff's first theory for why the City had a policy or custom of discrimination is that Young and Addlemen themselves are City policymakers. The question of who has final policymaking authority for a municipality is a question of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "The mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1400 (11th Cir. 1997) (quotations and citations omitted). *See also Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1294 (11th Cir. 2000) ("The opportunity for meaningful review will suffice to divest an official of any policy making authority.").

Here, Young and Addlemen are not policymakers because their actions are subject to meaningful administrative review. When issued a notice of violation, the matter proceeds to a special master procedure, wherein a special master hears the case, has the authority to issue orders which have the force of law, and determine whether any fines or penalties are warranted (DE #31, ¶¶5-9). Any decision may be appealed to the circuit court. Moreover, any civil citation is subject to review in county court (DE #31, ¶13). One court, in *Criswell v. City of Dallas*, 2001 U.S. Dist. LEXIS 7517, *7-10 (N.D. Tex. 2001), affirmed at 31 Fed. App'x 836 (5th Cir. 2002), was presented with a similar fact pattern, and held that code enforcement officers were not

policymakers under Section 1983. Plaintiff attempts to distinguish this case by pointing out that the code enforcement officers in *Criswell* performed investigative functions. However, Key West code enforcement officers also perform investigative functions before they decide whether to issue a citation or notice of violation. Thus, *Criswell* is not distinguishable. Moreover, Plaintiff offers no other argument for why the administrative review procedures in this case are inadequate. Thus, the actions of Young and Addlemen are subject to meaningful administrative review.

The only other argument on this point that Plaintiff makes is that Young and Addlemen were policymakers because they were titled "supervisors." However, their job titles have nothing to do with their power to bind the City or the meaningfulness of the administrative review procedures. "Policymaking authority is not conferred by the mere delegation of authority to a subordinate to exercise discretion." *Wilson v. Miami-Dade County*, 2005 U.S. Dist. LEXIS 38875, *8 (S.D. Fla. 2005). Young and Addlemen were supervisors and had discretion to enforce the City Code, but this does not make them City policymakers under Section 1983. Thus, Plaintiff's argument fails on this point.

## C.   The City Did Not Ratify Young and Addlemen's Conduct

Plaintiff's second argument is that the City ratified the actions of Young and Addlemen, because the City was on notice of Plaintiff's harassment and failed to correct it. To prevail on a ratification theory, Plaintiff must show that the City "approved a subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). However, the record is devoid of any evidence showing that any City official approved the decisions of Young and Addlemen, or their bases. In fact, just the opposite is true. When Plaintiff complained to Assistant City Manager Jones, Jones was sympathetic and helped Plaintiff obtain the license

which was the subject of Plaintiff's harassment. Further, even if City officials did nothing in response to Plaintiff's complaints, this would not be enough to subject the City to liability on a ratification theory, which requires the City to actually approve the decisions and the bases for those decisions. There is no indication here that City officials approved the decision to harass Plaintiff because of his race or religion. Thus, Plaintiff cannot prevail on a ratification theory.

**D.     The City Did Not Fail to Train or Supervise**

Plaintiff's third argument is that the City is liable for its failure to train code enforcement officers on discrimination issues. A failure to train argument can succeed in two instances: 1) when "city policymakers know to a moral certainty" that their employees will encounter a certain situation such that the need to train officers is "so obvious that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights[;]" and 2) when city employees "in exercising their discretion, so often violate constitutional rights that the need for further training [is] plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989). Thus, to prevail on this claim, Plaintiff cannot simply show that there was no training program; he must show a *need* for training first. That is, Plaintiff must show that the City either knew its code enforcement officers were being put in situations with a substantial likelihood of producing constitutional violations, or that constitutional violations were occurring with such frequency so as to put the City on notice of a need for further training. The evidence demonstrates that neither is true. Nothing in the record suggests that code enforcement officers were being put in situations likely to result in constitutional violations, and there is no evidence of other acts of discrimination or racially-motivated harassment by City employees. Plaintiff's argument seems to be that his complaints to the Assistant City Manager about his own mistreatment somehow put

the City on notice of a need to train its employees on discrimination issues. This argument cannot succeed; Plaintiff must instead show that the City knew of a series of previous incidents of discrimination and then failed to act appropriately. The record simply does not support that contention.

Plaintiff relies exclusively on *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir. 1989) to support his failure to train argument. In *Kerr*, the Eleventh Circuit held that the City's failure to train its police officer on appropriate police dog handling procedures, resulting in excessive dog bites of suspects, could have amounted to a failure to train argument under Section 1983. However, in *Kerr*, there was a multitude of evidence showing that West Palm Beach police officers were having canine encounters with suspects more frequently than other cities, and that the canine units were frequently using excessive force to apprehend suspects accused of minor misdemeanors. *Id.* at 1556. No such evidence of a pattern of discriminatory behavior exists in the instant case. Therefore, Plaintiff cannot prevail on this argument.

## IV.    Conclusion

The record does not support Plaintiff's argument that the City had a policy or practice of discrimination. Accordingly, the Court having read the parties' motions and legal authorities and being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that:

1.    Defendant's Motion for Summary Judgment (DE #18) is hereby **GRANTED.**

2.    The case is hereby **DISMISSED WITH PREJUDICE.** Jurisdiction is reserved for a determination of fees and costs.

3.    All dates stated in the Scheduling Order (DE #30) are hereby **CANCELLED.**

4.         The Clerk shall **CLOSE** this case and **DENY** any pending motions as

**MOOT**.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice

Building and United States Courthouse, Miami, Florida, this 11th day of September, 2009.


JAMES LAWRENCE KING
U.S. DISTRICT JUDGE

**Cc:**
**Counsel for Plaintiff**
Richard Gary Rumrell
Rumrell Costabel Warrington & Brock
9995 Gate Parkway North
Suite 190
Jacksonville , FL 32246
904-996-1100
Fax: 996-1120
Email: rumrell@rumrelllaw.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Alicia S. Curran
Rumrell Costabel Warrington & Brock
9995 Gate Parkway North
Suite 190
Jacksonville , FL 32246
904-996-1100
Fax: 996-1120
Email: curran@rumrelllaw.com
ATTORNEY TO BE NOTICED

Lindsey C. Brock , III.
Rumrell Costabel Warrington & Brock
9995 Gate Parkway North
Suite 190
Jacksonville , FL 32246
904-996-1100

Fax: 996-1120
Email: brock@rumrelllaw.com

**Counsel for Defendant**
Michael Thomas Burke
Johnson Anselmo Murdoch Burke Piper & Hochman PA
2455 E Sunrise Boulevard
Suite 1000
Fort Lauderdale , FL 33304
954-463-0100
Fax: 463-2444
Email: burke@jambg.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Hudson Carter Gill
Johnson, Anselmo, Murdoch, Burke, Piper & McDuff, PA
2455 E. Sunrise Boulevard
Suite 1000
Fort Lauderdale , FL 33304
954-463-0100
Fax: 954-463-2444
Email: hgill@jambg.com
ATTORNEY TO BE NOTICED